UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

LAURA JEAN JOE-CRUZ

        Plaintiff,

                                            Civil Action No. 1:16-cv-00258-SCY-WPL

v.

UNITED STATES OF AMERICA

        Defendant.

**THE PLAINTIFF'S REPLY TO THE RESPONSE BY DEFENDANT THE UNITED STATES OF AMERICA TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT ON SPOLIATION CAUSE OF ACTION, FOR SPOLIATION SANCTIONS, AND FOR SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37**

      The Plaintiff, Laura Jean Joe-Cruz, by and through her attorney, Ken Wagner Law, P.A., submits this reply to the Defendant's response to her motion for partial summary judgment on the spoliation cause of action and spoliation sanctions thereunder, and for sanctions under Federal Rules of Civil Procedure 37(c) and (e) (the "Spoliation Motion"). The Plaintiff states as follows.

## INTRODUCTION

      In its Response to the Spoliation Motion, the Defendant contends that (1) this Court does not have subject matter jurisdiction over the Plaintiff's spoliation cause of action, because the Federal Tort Claims Act ("FTCA") does not extend to such claims; and (2) sanctions are not appropriate under either the spoliation cause of action or under Rule 37(c) and/or (e) of the Federal Rules of Civil Procedure.

      First, this Court does have subject matter jurisdiction over the spoliation cause of action.

1

The Defendant relies on *United States v. Neustadt*, 81 S.Ct. 1294, 366 U.S. 696, 6 L.Ed.2d 614 (1961) and its progeny in asserting that the FTCA's "misrepresentation" exception applies to spoliation claims. *Neustadt* interpreted 28 U.S.C. § 2680(h) as barring claims arising out of negligent as well as willful misrepresentation. However, numerous courts, including the Tenth Circuit, have declined to extend that exception to spoliation claims. *See e.g., Trentadue v. United States*, 386 F.3d 1322, 1342-43 (10th Cir. 2004) (in FTCA action, assessing spoliation claim under state law of Oklahoma); *Krieger v. United States Dept. of Justice*, 529 F.Supp.2d 29, 60 (2008) (analyzing spoliation claim in FTCA case under D.C. Law); *Rodriguez v. United States*, 1:14-CV-02526 (D. Ohio, Jul. 14, 2015) (same with respect to spoliation claim under Ohio law).

Second, the Defendant argues that spoliation sanctions are not warranted in this case, because Ms. Joe-Cruz failed to demonstrate (1) that the Defendant knew or should have known that a lawsuit was imminent, (2) prejudice, and (3) bad faith. For essentially the same reasons, the Defendant argues that the requested sanctions: default judgment and/or prohibiting it from relying on the New Mexico Medical Malpractice Act ("NMMMA") cap on recovery, are inappropriate under Rule 37(c) or (e). As set forth below, the Defendant is wrong.

## ARGUMENT

### I. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER THE SPOLIATION CAUSE OF ACTION

Section 2680(h) excepts certain causes of action from the FTCA, as follows:

(h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights..." 28 U.S.C. 2680(h).

In *United States v. Neustadt*, 366 U.S. 696, the U.S. Supreme Court found that the United

States could not be held liable under the FTCA for damages resulting from an inaccurate FHA inspection and appraisal. The Court held that the misrepresentation exception in the FTCA applied to negligent, as well as willful misrepresentation. *See, Neustadt,* 366 U.S. at 698. Here, relying on *Neustadt*, the Defendant argues that "Courts have clearly established that spoliation causes of action are misrepresentation claims." (Response, p. 12). The Defendant has completely misstated the law.

Far from "clearly establishing" that spoliation claims fall under the misrepresentation exception, many federal courts, including the Tenth Circuit, have held that the misrepresentation exception should be applied narrowly—to causes of action which "fall within the commonly understood definition of a misrepresentation claim." *Trentadue,* 386 F.3d. at 1334. For example, in *Trentadue*, the Tenth Circuit addressed an FTCA claim brought by the family of an inmate who died under mysterious circumstances in a federal detention center in Oklahoma. Among other claims, the plaintiffs asserted Intentional Infliction of Emotional Distress ("IIED") and spoliation claims, the latter for destruction of evidence concerning the inmate's death. The Court assessed the spoliation cause of action under **Oklahoma state law, not under Section 2680(h)**. It stated: "[b]ecause the test established by the Tort Claims Act for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred, and spoliation is not a recognized tort in Oklahoma, we conclude that the district court did not err in denying plaintiffs' claim." (internal citations omitted) *Id.* at 1342-43.

The *Trentadue* Court also determined that the misrepresentation exception in Section

3

2680(h) did not apply to bar the IIED cause of action. *See, Trentadue,* 386 F.3d at 1335. In so doing, it clarified the boundaries of the exception, as follows:

> "The misrepresentation exception applies only when the action itself falls within the commonly understood definition of a misrepresentation claim... ***Such claims have been confined very largely to the invasion of interests of a financial or commercial character, in the course of business dealings***.... In accordance with these rules, circuit courts have held that a claim must contain the essential elements of misrepresentation to come within the exception...Those elements include reliance by the plaintiff ... upon the false information that has been provided, and pecuniary loss. (emphasis added) (internal citations omitted) *Trentadue,* 386 F.3d at 1334-35; *see also, Kohn v. United States*, 680 F.2d 922, 926-7 (2d Cir. 1982) (in FTCA action for wrongful death of plaintiffs' son while serving in the Army, stating that "[b]ecause the context here is hardly commercial in nature, we do not believe that appellants' claims are necessarily barred as an action for misrepresentation or deceit").

Thus the misrepresentation exception generally applies only to "commercial" claims for financial harm, ***not*** medical malpractice negligence actions such as Ms. Joe-Cruz's. *See, Trentadue,* 386 F.3d at 1335; *Kohn*, 680 F.2d at 926; *Reynolds v. United States*, 643 F.2d 707, 711 (10th Cir. 1981) (exception applies where plaintiff relies on false representations to his financial detriment).

U.S. District Courts also generally analyze spoliation causes of action under the relevant state law, not as Section 2680(h) misrepresentation claims. For example, *Krieger,* 529 F.Supp.2d 29, concerned an FTCA action for wrongful discharge from the U.S. Department of Justice. The plaintiff sought leave to amend his complaint to assert a spoliation count. The Court declined leave on the ground that he had not met the elements of a spoliation claim under D.C. law. *Id.,* 529 F.Supp.2d at 60-61. Similarly, in *Rodriguez*, 1:14-CV-02526, the Court analyzed the plaintiff's spoliation claim under Ohio law. *Id.*

This Court may also note that in *Smith v. United States*, 16-3117 (7th Cir. Jan. 27, 2017), a

non-precedential decision, the Seventh Circuit used an "either/or" analysis in discussing spoliation versus misrepresentation claims in an unclear complaint. It stated that, "[t]o the extent her claim could be construed as one for spoliation of evidence...Smith failed to allege facts sufficient to state such a claim. *Alternatively*, if she meant to assert a claim of misrepresentation (in that the removal of the hard drive tainted the completeness or accuracy of information given to the EEOC regarding her discrimination complaint), she would be barred from doing so because the FTCA expressly excludes claims arising out of misrepresentation." (emphasis added) *Smith,* 16-3117. Implicit in that decision is the fact that, had the plaintiff stated the state law elements of spoliation, the claim may have gone forward under the FTCA. Therefore, again, although the decision is not precedential, it highlights the fact that, contrary to the Defendant's contention, federal courts have not "clearly established" that spoliation claims fall under Section 2680(h)'s misrepresentation exception.

The Defendant's cases do not support its contention either. *Lipkin v. S.E.C.,* 468 F.Supp. 2d 614 (S.D.N.Y. 2006) and *Philippeaux v. U.S.*, 10-cv-6143 (NRB) (S.D.N.Y. Sept. 27, 2011), are the only two which concern spoliation causes of action. In both cases, the New York District Court determined, without any discussion or analysis, that the misrepresentation exception applied to bar these claims. *See, Lipkin,* 468 F.Supp.2d at 624 (in action for, inter alia, fraud and libel, "[t]o the extent plaintiffs make claims of concealment and spoliation of evidence, either these claims cannot be viewed as sounding in tort...or they fall within the misrepresentation or deceit exceptions to the FTCA"); *Philippeaux,* No. 10 Civ. 6143 (NRB) (in action based on rejection of plaintiff's claim for VA benefits, citing *Lipkin* and determining that spoliation cause

of action fell under misrepresentation exception). Neither decision is binding on this Court, and neither provides any analysis of why spoliation claims fall under the misrepresentation exception. These cases are especially unpersuasive where, as set forth above, numerous Circuit and District Courts have determined that the misrepresentation exception should be construed narrowly, and have examined spoliation claims under the relevant state law. *See, e.g. Trentadue*, 386 F.3d at 1334-35; *Krieger,* 529 F.Supp.2d at 60-61; *Rodriguez*, 1:14-CV-02526

Nor do the Defendant's other cases help it. In *Rogers v. Federal Bureau of Prisons*, 105 Fed.Appx. 980 (10 Cir. 2004) (unpublished), the plaintiff alleged that he relied on false information about his eligibility for parole to his *financial* detriment. The court held that his theory of recovery, came "closest to negligent misrepresentation" and was therefore barred under the FTCA. Notably, there was *no* spoliation claim. As set forth above, the misrepresentation exception has been "confined very largely to the invasion of interests of a financial or commercial character" (*Trentadue*, 386 F.3d at 1334), which is exactly what the plaintiff alleged in *Rogers*. Next, *Cordero v. Froats*, Civ. 13-0031 JCH/GBW (D.N.M. Jan. 9, 2015), did not concern the FTCA at all, but rather the NMTCA.

Finally, *Roper Hosp., Inc. v. United States*, 869 F.Supp. 362 (D.SC. 1994), actually support's Ms. Joe-Cruz's argument, not the Defendant's. In *Roper*, the Court found that the misrepresentation exception barred a claim that the government had failed to inform about the termination of plan coverage. The Court held that: "[t]he misrepresentation exception bars those claims *in which the plaintiff has alleged no injury separate or independent of its reliance on an erroneous governmental representation*." (emphasis added) *Roper,* 869 F.Supp. at 365. Here,

6

Ms. Joe-Cruz has alleged negligence for breach of duty to provide proper medical care by the Acoma-Canoncito-Laguna Service Unit ("CHC"), as well as a spoliation claim. The negligence claim is separate from the spoliation claim. Therefore, under *Roper*, the misrepresentation exception does not apply to her spoliation claim.

Accordingly, contrary to the Defendant's contention, Ms. Joe-Cruz's spoliation claim should be analyzed under New Mexico state law, and this Court has subject matter jurisdiction to hear it.

## II. THE PLAINTIFF ESTABLISHED THE REQUISITE ELEMENTS FOR SPOLIATION SANCTIONS

As the Defendant states, spoliation sanctions are proper where: "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009); *see, Jones v. Norton*, 809 F.3d 564, 580 (10th Cir. 2015); *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985 (10th Cir. 2006). The trial court has discretion in fashioning appropriate spoliation sanctions. *See, Procter & Gamble Co. v. Haugen*, 427 F.3d 727, 738 (10th Cir. 2005); *Jones*, 809 F.3d at 580; *Oldenkamp v. United American Ins. Co.*, 619 F.3d 1243, 1250 (10th Cir. 2010).

### a. Duty to Preserve and Knowledge of Imminent Litigation

The Defendant argues that Ms. Joe-Cruz failed to demonstrate that it knew or should have known that litigation was imminent at the time the records were presumably lost or destroyed, which, it asserts, was before February 6, 2015. The Defendant argues that this date "substantially predated" Ms. Joe-Cruz's administrative claim, and that therefore litigation was not imminent

when the records were lost or destroyed.

The Defendant misstates the law with respect to the duty to preserve evidence. To trigger that duty, litigation need not be "imminent," rather it must be "reasonably foreseeable." *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1345-47 (Fed. Cir. 2011); *Helget v. City of Hays*, 13-2228-KHV-KGG (D. Kan. (Mar. 31, 2014) *citing, Philips Electronics*, 773 F.Supp.2d 1149, 1195 (D. Utah 2011) ("[t]ypically, the duty to preserve commences with the filing of a lawsuit, but the duty may arise even before a lawsuit is filed if a party has notice that future litigation is likely"). Putative litigants are under an obligation to preserve evidence when the party has notice that the evidence is relevant to litigation or ***when a party should have known that the evidence may be relevant to future litigation***. (emphasis added) *See, Browder v. City of Albuquerque*, 187 F.Supp.3d 1288 (D.N.M. May 9, 2016).

In *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011), the Federal Circuit Court warned against a too restrictive interpretation of "imminent" litigation. It stated that, "the proper standard for determining when the duty to preserve documents attaches is the flexible one of reasonably foreseeable litigation, without any additional gloss." *Id.* at 1321. In *Browder,* which concerned a traffic accident wherein a police vehicle collided with the plaintiff's car, this Court stated that litigation would be "reasonably foreseeable" the moment the City became aware that a police officer was involved in a fatal accident. *See, Id.* 187 F.Supp.3d 1288, n3.

Here, CHC's records show that on February 13, 2014, Ms. Joe-Cruz had a "pending CC app date (2/4/14) Presb. Hosp." (Doc. US (Joe-Cruz) 0002). In April, 2014, she received

8

healthcare follow-ups at CHC. (Id.) Later that year, on September 18, 2014, she received a pneumonia PS vaccination at CHC, and in October of that year, a flu shot. (Doc. US (Joe-Cruz) 0024). These records demonstrate that the CHC was, or should have been, aware of Ms. Joe-Cruz's hospitalization at Presbyterian as early as February 13, 2014. Given the serious nature of the health crisis that lead to her hospitalization, and the fact that she was seen at the CHC just prior, litigation was certainly reasonably foreseeable.

In addition, documents showing the CHC social worker's record of telephone calls she received from Presbyterian, ***during Ms. Joe-Cruz's hospitalization***; reported the nature and extent of Ms. Joe-Cruz's critical presentation, current status at Presbyterian, and plans for her post-discharge transfer to Health South Rehabilitation Hospital. **(Exhibit A, Page 5-7 [Doc. 52-2] and Exhibit B, Page 4 [Doc. 52-3]).** These documents also demonstrate that CHC was, or should have been aware of the hospitalization as early as the hospitalization itself—in January and February of 2014.

Since it was reasonably foreseeable that litigation would result from the events leading to Ms. Joe-Cruz's hospitalization, the Defendant had a duty to preserve evidence relevant to that potential litigation. That includes *all* medical records of visits in January, 2014, just prior to January 13, 2014, when Ms. Joe-Cruz was taken to Presbyterian. *See, e.g. Browder,* 187 F.Supp.2d 1288; *MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 348 F.Supp.2d 332, 336 (D.N.J.2004) (noting that a litigant "is under a duty to preserve what it knows, or reasonably should know will likely be requested in reasonably foreseeable litigation"); *Scott v. IBM Corp.*, 196 F.R.D. 233, 249 (D.N.J.2000) (same).

### b. Prejudice

The Defendant contends that Ms. Joe-Cruz cannot show that she was prejudiced by the missing records, because it does not dispute that the CHC didn't provide her with a flu shot or Tamiflu in January 2014. However, the flu shots and Tamiflu are not the only reasons those records are relevant.

The Tenth Circuit has held that alleged spoliated evidence must be relevant in order to demonstrate the prejudice necessary to justify imposition of a spoliation sanction. *See, Henning v. Union P. R.R. Co.*, 530 F.3d 1206, 1220 (10th Cir. 2008). Relevance is **broadly construed**. *See, Carbajal v. Warner,* No. 10-cv-02862-REB-KLM (D. Colo. Mar. 18, 2013), *citing, Sheldon v. Vermonty*, 204 F.R.D. 679, 689-90 (D. Kan. 2001). As one Court put it: "[r]elevance is not so narrowly construed as to limit a story to its final chapter, and neither party is entitled to make it impossible for all meaningful parts of the story to be told." *Lutalo v. National Railroad Passenger Corporation*, Civil Action11-cv-00974-REB-KLM (D. Col. Mar. 28, 2013) (in negligence, false arrest and IIED action, where the plaintiff was arrested after someone allegedly overheard him having a "suspicious" conversation on an Amtrak train, cell phone records were relevant to demonstrate both his credibility as well as the elements of his negligence and emotional distress claims); *see, Helget*, 13-2228-KHV-KGG (in employment discrimination case, forensic recovery regarding the internet usage and e-mail usage of certain individuals, as well as Plaintiff's immediate coworkers and those individuals performing substantially similar job duties for Defendant City was both relevant and discoverable, even where the City claimed to have turned over about 10,000 emails).

Here, given the seriousness of Ms. Joe-Cruz's illness, necessitating transfer to Presbyterian Hospital in fulminant septic shock and respiratory failure, the records just prior to her hospitalization are relevant beyond whether a flu shot or Tamiflu were administered or not. These missing records—from January 7[1] and 9, 2014, are relevant to show that Ms. Joe-Cruz's condition was worsening, and that the CHC failed to properly treat her or to take steps to see that she was treated for her symptoms. These are key elements in her medical malpractice negligence claim.

Further, Ms. Joe-Cruz was hospitalized with *secondary bacterial pneumonia*, as well as H1N1 influenza. Therefore, although it is certainly relevant that she did not receive a flu shot or Tamiflu in January, 2014, the CHC's assessment and treatment of her condition is also relevant. As we have stated, secondary bacterial pneumonia does not arise in a vacuum.

Thus, the missing records are relevant and necessary to demonstrate CHC's failure to act in accordance with appropriate medical standards of care when confronted with a patient presenting with the kind of symptoms that Ms. Joe-Cruz presented with, and she has been prejudiced by their loss and/or destruction.

### c. Bad Faith

The Defendant contends that Ms. Joe-Cruz is not entitled to harsh sanctions, because she failed to demonstrate bad faith. In support of its argument, it relies heavily on the same contentions it used in arguing that Ms. Joe-Cruz failed to demonstrate imminency of litigation

---

1   Although the Defendant maintains that Ms. Joe-Cruz "left without being seen" on January 7, 2014, the undisputed fact is that *she came to CHC on that date.* Therefore, for the reasons set forth above, including her worsening condition during early January, 2014, that missing record is relevant.

11

and prejudice: that the documents were lost long before the CHC should have known of the potential for litigation, and that there is no dispute that she was not given a flu shot or Tamiflu. As above, neither of these assertions are persuasive. Further, Ms. Joe-Cruz has demonstrated bad faith.

As the Defendant asserts, without a showing of bad faith, a district court may generally only impose lesser sanctions. *See, Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009); *Aramburu v. Boeing Co.*, 112 F.3d 1398 (10th Cir. 1997) (the general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction); *Jones*, 809 F.3d at 580, *citing Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) (a dismissal or default judgment should be predicated on willfulness, bad faith or some fault, rather than on a simple failure to comply); *cf. 103 Investors I, L.P. v. Square D Co.,* 470 F.3d at 988-989 (striking testimony as spoliation sanction where no bad faith shown).

Importantly, "[t]he fundamental element of bad faith spoliation is advantage-seeking behavior by the party with superior access to information necessary for the proper administration of justice." *Micron*, 645 F.3d at 1326. In other words, "[b]ad faith, or culpability, may not mean evil intent, but may simply signify responsibility and control." *McCargo v. Texas Roadhouse, Inc.*, Civil Action 09-cv-02889-WYD-KMT (D. Col. May 2, 2011), *quoting, Phillip M. Adams & Associates, L.L.C. v. Dell, Inc.*, 621 F.Supp.2d 1173, 1193 (D. Utah 2009).

Here, the Defendant argues that its "multiple document productions" demonstrated a good faith effort to comply with production. However, far from demonstrating good faith, the

12

Defendant's "multiple" productions *all* left out the two key records from January, 2014, despite numerous requests from both Ms. Joe-Cruz and her attorneys. These records are, as set forth above, essential to this litigation. Moreover, they were in the Defendant's control, and, once the duty to preserve attached, the Defendant had the responsibility to maintain them. As noted in *McCargo,* "after the duty to preserve attaches, the failure to collect either paper or electronic records from key players...is grossly negligent or willful behavior." *Id.*, Civil Action 09-cv-02889-WYD-KMT.[2] As set forth above, the Defendant's duty to preserve attached in February, 2014, and applied to records of health care encounters just prior to Ms. Joe-Cruz's hospitalization. Therefore, its failure to preserve these records is "grossly negligent or willful behavior"—in other words, bad faith. *See, e.g. McCargo*, Civil Action 09-cv-02889-WYD-KMT.

### III. SANCTIONS ARE ALSO APPROPRIATE UNDER FED. R. CIV. P. 37(c) AND (e)

#### a. Sanctions Under Rule 37(c)

The Defendant argues that since Ms. Joe-Cruz failed to demonstrate bad faith, a default judgment sanction under Rule 37(c) is unwarranted. It uses a similar argument against the requested sanction of precluding it from relying on the damages cap under the NMMMA. However, as set forth above, Ms. Joe-Cruz has demonstrated "willful behavior" or bad faith.

The Defendant also contends that application of the *Ehrenhaus v. Reynolds* factors to this case argues against a default judgment. *See,* 965 F.2d 916, 920 (10th Cir. 1992). The *Ehrenhaus*

---

2  Further, as set forth in the Spoliation Motion, Ms. Joe-Cruz's attorneys, Ken Wagner Law, made numerous requests to the medical records staff for a Custodian's Affidavit regarding the missing records. The Medical Records Staff informed Ken Wagner Law that they could not fill out the Affidavit because there was no notary available, then rejected a notary that Ken Wagner Law sent over. Although the Affidavit was eventually produced, it was done so only after numerous requests, and the rejected offer of a notary. This stonewalling of a simple request lends further weight to a finding of willfulness herein.

factors are: (1) the degree of actual prejudice; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *See, Id.* 965 F.2d at 921. "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Id.*

With respect to the first factor, again, Ms. Joe-Cruz did show prejudice from the missing records. Even beyond the fact that relevance is "broadly construed" (*Carbajal,* No. 10-cv-02862-REB-KLM; *Sheldon*, 204 F.R.D. at 689-90; *Lutalo*, Civil Action 11-cv-00974-REB-KLM), common sense dictates that the severity of Ms. Joe-Cruz's illness when she entered Presbyterian Hospital on January 13, 2014, renders, at the very least, the medical records from January, 2014 relevant to her claim of medical malpractice.

Second, with regard to interference, the record speaks for itself. The Defendant forwarded multiple documents, ***as a result of multiple requests***, but none of those documents contained the missing records. In fact, the multiple requests by both Ms. Joe-Cruz and Ken Wagner Law were necessitated by the fact that the Defendant failed and kept failing to produce all of the requested records. Therefore, the mere fact that they made multiple submissions does not cut in their favor, especially given that they sent different sets of records with each submission, when the requests were straightforward, and concerned specific dates.

With respect to factor (3), culpability, the Defendant again argues that litigation was not imminent, and therefore the records went missing long before it had a duty to preserve them. As above, the Defendant misstates the law regarding the duty to preserve. Here, it attached far

earlier than the Defendant asserts. The CHC was aware of Ms. Joe-Cruz's hospitalization by at least February or April of 2014, and probably before. Thus, the Defendant should have known that litigation was reasonably foreseeable.

With respect to factor (4), it is conceded that this Court has not yet warned the Defendant of the consequences of its actions. With respect to (5), lesser sanctions, the above discussion regarding spoliation elements, especially bad faith, argue against lesser sanctions.

The *Ehrenhaus* factors are not a "rigid test," nor do they all need to be present in order to apply the sanction of default judgment. *Id.* 965 F.2d at 921; *Lee*, 638 F.3d at 1323. As set forth here and in Ms. Joe-Cruz's Spoliation Motion, the first three *Ehrenhaus* factors weigh heavily in favor of harsh sanctions such as a default judgment on negligence, and/or the striking of the NMMMA cap.

### b. Sanctions under Rule 37(e)

For the reasons set forth above with respect to spoliation sanctions and sanctions under Rule 37(c), this Court may also, or alternatively, grant sanctions under Rule 37(e). Again, the Defendant contends that Ms. Joe-Cruz failed to demonstrate "imminent" litigation, and prejudice. As above, she amply demonstrated both. Therefore, sanctions are also appropriate under Rule 37(e).

### CONCLUSION

For all the foregoing, this Court should find that it has subject matter jurisdiction to hear the Plaintiff's intentional spoliation claim, should grant partial summary judgment thereon and sanctions thereunder, including a finding of negligence against CHC. Further, this Court should

15

grant sanctions under Rule 37(c) including, but not limited to entry of a default judgment on the negligence cause of action and the scheduling of a trial on damages only, and precluding CHC from relying on the NMMMA recovery cap; and grant sanctions under Rule 37(e), including but not limited to an adverse inference against CHC for failure to produce the missing medical records, as well as any other relief as to this Court seems just and proper.

Respectfully submitted,

*Electronically Filed*

**KEN WAGNER LAW, P.A.**
By: */s/ Kenneth R. Wagner*
    Kenneth R. Wagner, Esq.
    P.O. Box 25167
    Albuquerque, NM  87125
    505.242.6300
    505.242.0790 (facsimile)
    *Attorney for Plaintiff*

**WE HEREBY CERTIFY** that a true copy of the foregoing pleading was filed and served on March 9, 2017 through the Court's CM/ECF electronic filing system:

United States Attorney
Christopher F. Jeu
Assistant United States Attorney
P.O. Box 607
505.346.7274/505.346.7205 (facsimile)
Christopher.Jeu@usdoj.gov
*Attorney for Defendant*


*/s/ Kenneth R. Wagner*
Kenneth R. Wagner
on this ___ day of January, 2017.