# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LAURA JEAN JOE-CRUZ,

       **Plaintiff,**

vs.                                  **Civ. No.  16-258 JCH/JHR**

UNITED STATES OF AMERICA,

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

This case is before the Court on *Plaintiff's Motion to Exclude Defendant's Expert, George A. Diaz* [Doc. 79] and *Defendant's Motion for Leave to File Surreply* [Doc. 89]. In addition to the motion to exclude the expert, the Court has considered the response [Doc. 84], the reply [Doc. 88], and the surreply [Doc. 89-1], as well as the motion to exclude the expert. Although the motion for leave to file surreply is opposed, Plaintiff filed no response in opposition to it. As set forth below, the Court concludes that Defendant should be permitted to file its surreply, and the Plaintiff's motion to exclude the expert should be denied.

## DISCUSSION

### I.     Motion for Surreply

"The filing of a surreply requires leave of the Court." D.N.M.LR-Civ. 7.4(b). When a movant includes new material or new arguments in its reply brief, the court must either permit the nonmovant to file a surreply, or disregard the new material or arguments in ruling on the motion. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1139 n.13 (10th Cir. 2003); *S.E.C.*

*v. Goldstone*, 2014 WL 6065611 at *2 (D.N.M. 2014) ("A surreply is appropriate and should be allowed where new arguments are raised in a reply brief.").

The Court agrees with Defendant that the Plaintiff, Laura Jean Joe-Cruz ("Joe-Cruz"), has raised new issues in her reply brief that the Defendant should be permitted to address. Therefore, the Court will consider Defendant's proposed surreply, filed as Doc. 89-1.

## II.      Motion to Exclude Expert

### A.      Background

In this medical malpractice case, Joe-Cruz moves the Court for an order excluding from evidence all opinions by the Defendant's expert, Dr. George A. Diaz, pursuant to Rule 702 of the Federal Rules of Evidence. As grounds for this motion, Joe-Cruz contends that Dr. Diaz is not qualified to express an opinion regarding whether Defendant met the standard of care in her treatment because he is an expert in infectious diseases instead of emergency medicine.

Joe-Cruz has alleged that on January 9, 2014, after feeling ill for two days, she went to the Acoma-Canoncito-Laguna Service Unit (hereafter, "CHC"), located in Cibola County, New Mexico, for medical treatment. Amended Complaint, Doc. 27. According to the Amended Complaint, she presented with symptoms common to influenza and was discharged that day with instructions to take Tylenol and fluids. The next day, Joe-Cruz returned to CHC feeling weak, feverish, and having difficulty breathing. Donita Demontiney, P.A.-C, evaluated Joe-Cruz. Noting that Joe-Cruz appeared ill, had yellow pulmonary expectorate, bilateral wheezing, and rhonchi, Demontiney refilled Joe-Cruz's asthma inhaler prescription and wrote a new prescription for the antibiotic Azithromycin. Demontiney also performed a flu swab on Joe-Cruz, which was negative. Doc. 27; Doc. 79 at 2. On January 13, 2014, Joe-Cruz traveled by

ambulance to Presbyterian hospital in Albuquerque, New Mexico. She was in acute respiratory failure and fulminant septic shock. There, she was diagnosed with H1N1 influenza and secondary bacterial pneumonia. Joe-Cruz was intubated and put on ventilator support. She was discharged from the hospital on February 28, 2014.

Dr. Diaz is a physician who specializes in infectious diseases. Among other qualifications, he is presently the Section Chief for Infectious Diseases at Providence Regional Medical Center Everett; the owner of Everett Infectious Diseases, PLLC; and a lecturer for University of Washington medical students. Doc. 84-1. From 2010 to 2014, Dr. Diaz served as the Co-Chair for the Clinical Advancement Team, Infectious Diseases. *Id*. He has completed a fellowship in infectious diseases, and from 2002-2005 he served as Medical Officer of the Day at Fort Harrison Veteran's Administration in Helena, Montana. *Id*. He has worked in urgent care and emergency room settings. Doc. 89-1 at pp. 10-15 of 15.

B.    Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R. Evid. 702. A witness, qualified by knowledge, skill, experience, training, or education, may offer an opinion so long as the following conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based upon sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* Rule 702 incorporates the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), to ensure that

proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. Fed. R. Evid. 702, 2000 Amendments.

To determine whether an expert opinion is admissible, the district court performs the following two-step analysis: (1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so qualified, the court must determine whether the expert's opinion is reliable under the principles set forth in *Daubert*. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). *Daubert*'s general holding setting forth the judge's gate-keeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge. *Kumho Tire*, 526 U.S. at 141. Trial courts have equally broad discretion in both determining the reliability and admissibility of expert testimony and in deciding how to assess an expert's reliability, including what procedures to use in making that assessment. *United States v. Velarde*, 214 F.3d 1204, 1208-09 (10th Cir. 2000). So long as the district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997).

Here, Joe-Cruz contests only the first element—Dr. Diaz's qualifications. Pursuant to Rule 702, a witness' qualifications are an insufficient foundation, by themselves, to admit expert testimony, *United States v. Crabbe*, 556 F.Supp.2d 1217, 1220 (D. Colo. 2008), but appropriate qualifications are a threshold requirement which, if not met, requires exclusion of expert opinions. An expert must "stay[ ] within the reasonable confines of his subject area." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (quotation marks and citation omitted); *see Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1093 (W.D. Okla.

2009) ("[T]he expert's qualifications must be both (i) adequate in a general, qualitative sense (i.e., 'knowledge, skill, experience, training or education' as required by Rule 702) and (ii) specific to the matters he proposes to address as an expert."). "[M]erely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." *Ralston*, 275 F.3d at 970.

The Federal Rules encourage the admission of expert testimony. 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.02[1], at 702-5 (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2012). The *Daubert* court recognized the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion' testimony." *Daubert*, 509 U.S. at 588 (internal quotation marks omitted). "The presumption under the Rules is that expert testimony is admissible." 4 Weinstein & Berger, *supra*, § 702.02[1], at 702-5. "A review of the caselaw after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Committee's note to 2000 amendment. As the Advisory Committee explained, "'the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system.'" *Id.* (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). "As the Court in *Daubert* stated: 'Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* (quoting *Daubert*, 509 U.S. at 596). These conventional devices, rather than exclusion under the restrictive and elevated standard set by *Frye*, are "the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." *Daubert*, 509 U.S. at 596. "As the ultimate fact-finder, it is the jury that must determine, finally, where the

truth in any case lies, and the district judge as gatekeeper may not usurp this function." *United States v. Frazier*, 387 F.3d 1244, 1272 (11th Cir. 2004).

Plaintiff challenges Dr. Diaz's qualifications to express an opinion as to whether Defendant breached the standard of care in treating Joe-Cruz because Dr. Diaz is not an expert in emergency medicine. Neither party has requested a pre-trial evidentiary hearing to assess Dr. Diaz's qualifications. Instead, they submitted and relied principally on the expert reports, portions of deposition transcripts, and other exhibits. In light of this record, the Court can rule on the motions without a formal hearing. *Cf. Ho v. Michelin North America, Inc.*, 520 F. App'x 658, 664 (10th Cir. Mar. 29, 2013) (unpublished) (concluding court permissibly exercised its discretion in ruling on *Daubert* motion without hearing where it had before it several expert reports, expert deposition transcripts, and other evidence to accompany parties' arguments).

C.      Analysis

Joe-Cruz has asserted claims against Defendant for negligence and spoliation of evidence. According to the report of Plaintiff's expert, Dr. Michael Levine, Defendant was negligent in (1) not offering Joe-Cruz the flu vaccine prior to her first illness, (2) not offering Joe-Cruz Tamiflu at any time. Doc. 84-2.[1]

---

[1] In her reply brief, Plaintiff asserts that Dr. Levine's opinions at trial will not be limited to those set forth in his September 14, 2016 written report, Doc. 84-2, but rather will include additional opinions set forth at his deposition in April of 2017. Plaintiff states that these additional opinions will include: "that Ms. Joe-Cruz's 'ill appearance,' worsening symptoms, and tachycardia on January 10, 2014, should have alerted the medical personnel at CHC to the urgency of her condition, and that *they should have sent her to a hospital at that point*. . . . Ms. Joe-Cruz's presentation should have alerted CHC personnel to an emergency situation. The care she received was therefore emergency care." Doc. 88 at 2-3 (emphasis in original). The issue of Dr. Levine asserting opinions outside of his written report arose in the reply and surreply briefs, and is not directly the subject of the motion before the Court. Thus, the Court expresses no opinion at this time as to whether Dr. Levine will be permitted to assert any such opinions at trial.

In his report, Dr. Diaz opines that Defendant did not breach the duty of care to Joe-Cruz because, *inter alia*: (1) she declined to take the flu shot recommended by Defendant in 2013, which likely would have prevented her illness; (2) based on Joe-Cruz's symptoms on January 10, 2014, treatment for bronchitis was reasonable; (3) the influenza test done on Joe-Cruz was negative, and influenza activity in the local area at the time was low; (4) Joe-Cruz had been experiencing symptoms for more than 48 hours before seeing a medical provider, and after that point treatment with Tamiflu has not been shown to decrease complications of influenza, (5) administration of Tamiflu would have shortened her hospitalization at most by one to two days; and (6) the published risk factors for complications due to influenza are based on weak evidence. Doc. 84-1 at 8 of 12. Joe-Cruz contends that Dr. Diaz is not qualified to render these opinions because as an infectious disease specialist, he cannot "opine as to the issues in the case, which concern emergency medicine." Doc. 79 at 6.

The Court concludes that Joe-Cruz takes too narrow a view of the expertise required. Defendant has met its burden to show that as a practicing physician who is board-certified in infectious diseases and who has experience treating patients in urgent care, emergency room, and hospital settings, Dr. Diaz is qualified by education, training, and experience to diagnose and treat infectious diseases, such as influenza, and to opine as to whether the treatment offered to Joe-Cruz by Defendant met the standard of care. None of the cases cited by Plaintiff persuade the Court otherwise. Rather, the fact that Dr. Diaz is not an expert in emergency medicine does not go to the admissibility of his opinions, but rather to their weight, and therefore Joe-Cruz is free to cross examine him on this point.

**IT IS THEREFORE ORDERED** that *Plaintiff's Motion to Exclude Defendant's Expert, George A. Diaz* [Doc. 79] is **DENIED** and *Defendant's Motion for Leave to File Surreply* [Doc. 89] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**